# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-0027
_____

EDWARD HARRIS, JR.,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Wakulla County.
J. Layne Smith, Judge.

December 4, 2024

LONG, J.

Appellant, Edward Harris, Jr., appeals his judgment and sentence for first-degree murder, child neglect, fleeing to elude law enforcement, and possession of a firearm by a convicted felon. Harris argues that the trial court erred when it (1) admitted into evidence crime scene and autopsy photographs of the victim, (2) admitted into evidence testimony regarding text messages that Harris allegedly sent, and (3) imposed costs of prosecution without a request from the State. We affirm the costs of prosecution without further discussion. *See Parks v. State*, 371 So. 3d 392, 393 (Fla. 1st DCA 2023) (holding that the minimum cost of prosecution is mandatory regardless of whether the State requests it). We also affirm on the other two issues for the reasons discussed below.

# I. Admission of Photos

A jury found Harris guilty of premeditated murder. At trial, the State, over defense objection, admitted photos of the victim taken at the crime scene and at the autopsy. Harris argued at trial, and now argues on appeal, that the photos were unfairly prejudicial, cumulative, and were not relevant to any disputed fact.

Contrary to the State's assertion, this issue was properly preserved. Before trial commenced, Harris' counsel objected to the photos' admission by identifying them by exhibit number and letter. Counsel articulated that the photos were prejudicial and cumulative. And counsel argued that they were not relevant to explain the medical findings since the victim's cause of death was undisputed. All of this, we find, was sufficient to put the trial court on notice of the alleged error and provided a sufficient opportunity for correction. *See* § 924.051(1)(b), Fla. Stat.; *State v. Ivey*, 285 So. 3d 281, 286 (Fla. 2019) (clarifying that "no magic words are required" and that the purpose of the preservation rule "is to place the trial judge on notice that error may have been committed, and provide him an opportunity to correct it") (citations and quotations omitted). We, therefore, review the photos' admission for abuse of discretion. *Campbell v. State*, 271 So. 3d 914, 933 (Fla. 2018).

"The test for admissibility of photographic evidence is relevancy rather than necessity." *Pope v. State*, 679 So. 2d 710, 713 (Fla. 1996). Crime scene photos are relevant "when they establish the manner in which the murder was committed, show the position and location of the victim when he or she is found by police, or assist crime scene technicians in explaining the condition of the crime scene when police arrived." *Douglas v. State*, 878 So. 2d 1246, 1255 (Fla. 2004). "Where photographs are relevant, the trial court must determine whether the 'gruesomeness of the portrayal is so inflammatory as to create an undue prejudice in the minds of the jur[ors] and [distract] them from a fair and unimpassioned consideration of the evidence.'" *Id.* (quoting *Czubak v. State*, 570 So. 2d 925, 928 (Fla. 1990)); *see also Johnson v. State*, 351 So. 3d 252, 254 (Fla. 1st DCA 2022) (holding that relevant photographs will be inadmissible if their probative value is substantially outweighed by the danger of unfair prejudice or needless presentation of cumulative evidence).

2

It was undisputed that the victim's death was caused by three gunshot wounds. At issue was whether Harris was the person who shot the victim, and whether he did it with premeditation. The State presented evidence that Harris and the victim had been in a prior romantic relationship and had two children together. On the weekend of the incident, Harris had the two children staying at his house. Late in the evening, Harris summoned the victim to the house under the pretext of coming to get the children. When she arrived, he carried out his plan to kill her.

Both the crime scene photos and the autopsy photos were relevant to the charge of first-degree murder. The State used the photos, both during the presentation of evidence and during closing argument, to explain what happened, to identify Harris as the shooter, and to show that the killing was premeditated. As to the crime scene photos, they showed the position and location of the victim when she was found by law enforcement, and assisted law enforcement witnesses in explaining the condition of the crime scene when they arrived. As to the autopsy photos, they corroborated the testimony that Harris first shot the victim while she stood holding their one-year-old child on her hip. And that as the victim attempted to flee, Harris, at close range, shot into the back of her head and then shot her in the face. The autopsy photos assisted the medical examiner in explaining the order in which the victim sustained each of her wounds and the shooter's distance from the victim during each shot.

Contrary to Harris' assertion, the autopsy photos did not create undue prejudice. In the trial court's preliminary screening, it concluded that the photos did not contain any "graphic, over-the-top, gory images." The record confirms that none of the photos were particularly gruesome or disturbing. Nor were the photos cumulative. While some of the photographs did portray the same person, objects, or space, none of the admitted photographs were duplicative. *See Hampton v. State*, 103 So. 3d 98, 115 (Fla. 2012) (holding that similar photographs can be admissible). Because the photos were relevant, probative of disputed issues, noncumulative, and were not unfairly prejudicial, we affirm their admission.

3

## II. Admission of Testimony Regarding Text Messages

At trial, the State, over defense objection, presented testimony regarding two text messages that were allegedly authored and sent by Harris. Harris objected to the messages for lack of foundation and lack of indicia of authenticity.

We review a trial court's ruling on the authentication of evidence for abuse of discretion. *Mullens v. State*, 197 So. 3d 16, 25 (Fla. 2016). The requirement that evidence be authenticated as a condition of its admissibility is "satisfied by evidence sufficient to support a finding that a matter in question is what its proponent claims." § 90.901, Fla. Stat. To determine whether evidence is authentic, the trial court may consider the evidence's "appearance, contents, substance, internal patterns, or other distinctive characteristics in conjunction with the circumstances." *Gosciminski v. State*, 132 So. 3d 678, 700 (Fla. 2013). If the evidence is admitted after a "prima facie" showing is made that the evidence is what it purports to be, then the ultimate determination of whether the evidence is authentic is for the jury. *Mullens*, 197 So. 3d at 27.

The record shows that Tamika Nelson received the disputed text messages. They were found on Nelson's phone by a detective, and they came from a contact labeled "Edward Harris" with three hearts after it. Harris is the father of four of Nelson's children, and, at the time, the two were cohabiting. The sender of the messages referred to his seven children, and Harris has seven children. One of the messages was signed "Love always, June." June is a known nickname for Harris. Further, the evidence contains no alternative explanation. There is nothing to suggest someone else sent the text messages. All of this taken together is more than enough to authenticate the messages. The trial court did not err when it admitted testimony regarding these text messages.

AFFIRMED.

ROWE and KELSEY, JJ., concur.

4

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

Jessica J. Yeary, Public Defender, and Danielle Jorden, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Miranda Lee Butson, Assistant Attorney General, Tallahassee, for Appellee.